# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| DONALD DICKERSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV608-098 |
| | ) | [CR605-016] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Donald Dickerson moves, over the government's opposition, for 28 U.S.C. § 2255 relief. (Doc. 1 & 4.)[1] For the following reasons, his motion should be **DENIED**.

## I. BACKGROUND

A jury found Dickerson guilty of knowingly and intentionally making his home available for the purpose of unlawfully distributing controlled substances in violation of 21 U.S.C. § 856(a)(2) (cr. doc. 50), and the district judge sentenced him to 170 months' imprisonment (cr. doc. 56). After unsuccessfully appealing his conviction and sentence, *United*

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV608-098. "Cr. doc." refers to documents filed under movant's criminal case, CR605-016.

*States v. Dickerson*, 228 F. App'x 864 (11th Cir. 2007) (per curiam), Dickerson filed the present § 2255 motion, asserting that his:

(1) conviction was obtained in violation of his right to be present at all critical stages of the trial;

(2) counsel was ineffective for failing to provide certain exculpatory evidence to the government prior to trial;

(3) counsel was rendered ineffective by the judge's rulings, which limited his ability to cross-examine witnesses;

(4) counsel was ineffective for failing to call Kerry Lipsey as an exculpatory witness; and

(5) sentence was improperly enhanced, since the jury did not explicitly find that he participated in the underlying offences.

(Doc. 1 at 5-12.)

## II. ANALYSIS

### A. Procedural Default

Dickerson failed to raise grounds 1 and 5 on direct appeal. (*Id.*) "Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Accordingly, grounds 1 and 5 are procedurally defaulted unless Dickerson can establish

cause and prejudice excusing his default (or establish his actual innocence of the crime). *Id.* at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Dickerson contends that he did not present grounds 1 and 5 to the Eleventh Circuit because his counsel was ineffective. (Doc. 1 at 5-12.) It is well established that "constitutionally '[i]neffective assistance of counsel . . . is cause" for excusing a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted). Consequently, the Court must analyze grounds 1 and 5 to determine whether counsel was ineffective for failing to assert them.

Dickerson also failed to present grounds 2, 3, and 4 on direct appeal,[2] but they are claims of ineffective assistance of counsel, which are not subject to the procedural default rule. Because of the unique aspect of such claims, an ineffective-counsel "claim may be brought in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Accordingly, grounds 2, 3, and 4 must be reviewed on the merits.

---

[2] Grounds 2 and 3 were raised substantively, but not as claims of ineffective assistance of counsel. *Dickerson*, 228 F. App'x 864, 865 (11th Cir. 2007).

3

## B. Legal Standard

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a movant received ineffective assistance of counsel. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his

counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

The same *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). In *Jones v. Barnes*, 463 U.S. 745 (1983), however, the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id.* at 751-52. Appellate

counsel has no duty to assert every potentially colorable claim of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." *Id.*

### C.   Ground 1

Dickerson first contends that his conviction was obtained in violation of his right to be present for all critical stages of his trial. (Doc. 1 at 5.) Specifically, he contends that he did not attend jury selection because "his Attorney . . . told him that he did not need to be present." *Id.*

This contention is directly contrary to the record, which shows that Dickerson *was* present during the February 6, 2006 jury selection process:

| | |
|---|---|
| THE COURT: | Representing the defendant is Mr. Victor Hawk. Mr. Hawk has practiced law for a number of years. His offices are in Augusta, Georgia. |
| | Mr. Hawk, would you identify yourself and your client. And I will ask [Assistant United States Attorney] Mr. Knoche to identify his witness. While you are standing, if you will identify yours. |
| MR. HAWK: | Yes, sir. |

> My name is Vic Hawk. I have a law office in Augusta, Georgia, and also Millen, Georgia.
>
> This is Mr. Donald Dickerson.
>
> Donald, if you will stand.
>
> I will be representing Donald in this case.

(Cr. doc. 104 at 9-10 (Transcript of Jury Selection).) Since Dickerson was present at his jury selection, his claim is plainly without merit--counsel had no obligation to object to a non-existent error, so this ground should be denied.[3]

### D. Grounds 2 and 4

In grounds 2 and 4, Dickerson contends that counsel was ineffective for failing to present evidence that could have impeached government witnesses who testified he was present when an undercover agent and confidential informant purchased two ounces of crack cocaine at his house on July 8, 2004 from Kerry Lipsey, his daughter's boyfriend. (Doc. 1 at 6-7; *id.* at 10-11.)

---

[3] Dickerson submitted an affidavit, under oath, stating that he was not present for jury selection. (Cr. doc. 85 at 4.) The present petition, signed under penalty of perjury, asserts the same fabricated story. (Doc. 1 at 17.) Accordingly, the government indicted Dickerson for perjury, a charge presently pending in this district. *United States v. Dickerson*, No. CR608-036 (S.D. Ga. filed Dec. 11, 2008).

7

Looking first to ground 4, Dickerson contends that his counsel was ineffective for failing to call Kerry Lipsey as a witness to confirm the fact that Dickerson was not present at the July 8 transaction. (*Id.* at 10.) A lawyer's decision to call some witnesses and not others is "the epitome of a strategic decision" and is one that the courts "seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Here, a reasonable lawyer certainly could have made the strategic decision not to call Lipsey. After all, Lipsey, who was serving time in federal prison at the time of Dickerson's trial for drug dealing, was open to a withering cross-examination, and it would not have been unreasonable for counsel to conclude that his testimony would have carried little weight with the jury. Moreover, there is no indication that counsel's decision to exclude Lipsey prejudiced Dickerson's defense, as any additional testimonial evidence on the issue of Dickerson's presence at the July 8, 2004 meeting would have been cumulative. Both Dickerson and Tammy Brinson testified that he was not present for the July 8, 2004 transaction. (Cr. doc. 69 at 100-101, 157-61.) Dickerson simply has not overcome the presumption of effective assistance on ground 4.

In ground 2, Dickerson contends that his counsel should have timely provided certain payroll records from Pawn City to the government prior to trial to show that he was working on the day of the transaction, so he could not have been present for the July 8, 2004 Lipsey transaction. (Doc. 1 at 7.) Those records were excluded by the trial judge because they were not timely produced in discovery.[4]

Dickerson has not shown that counsel's failure to properly introduce the Pawn City payroll records prejudiced his defense. In resolving the prejudice issue, the Court is guided by the Eleventh Circuit's analysis, which rested upon the following facts established at trial:

> The evidence--much of it consisting of the testimony of drug traffickers and users--established that throughout the time frame indicated in the indictment, [Dickerson's] residence was used to cook crack cocaine and as a place where drug sellers and buyers met to consummate their transactions. On many occasions [Dickerson] was present and tacitly, if not explicitly, approved of what was going on.
>
> [Dickerson] was a city firefighter whose working hours were such that he was able to hold several odd jobs on the side: car detailing (which he did in his yard), apartment maintenance, floor waxing and lawn work. His residence was, as police

---

[4] On appeal Dickerson directly attacked the district judge's exclusion of Pawn City payroll records. *Dickerson*, 228 F. App'x at 865. The Eleventh Circuit found "no abuse of discretion in the Court's refusal to allow the records into evidence." *Id.* at 866-67.

9

officers described it, a "hot spot" for sales of crack cocaine, "a bee-hive of activity," and "one of the hottest locations in town" for drug trafficking. The trafficking spanned at least a decade. One drug user bought crack at [Dickerson's] home at least 40 or 50 times from 1994-1997, and a Jamaican drug dealer delivered narcotics to the house on approximately 100 occasions from 2002-2003. Given the frequency of drug dealing at [Dickerson's] residence, officers obtained two search warrants and videotaped their execution. The first search occurred in 1995, at eleven o'clock at night, and uncovered crack cocaine, marijuana, drug paraphernalia, a .380 caliber pistol, and cash. Three individuals were arrested, charged with drug offenses, and convicted.

Drug trafficking at [Dickerson's] residence abated for a while following this incident, but by 1998, the police had enough concrete evidence of drug dealing there to obtain another search warrant. Executing the warrant, the officers found crack cocaine and various items of drug paraphernalia. They arrested [Dickerson] later in the day; he told them that he knew drugs were being dispensed at his home, but that he had no control over it.

Drug dealing at [Dickerson's] residence continued. Drug users testified that when they went to the house to purchase drugs, [Dickerson] would call his children or his daughter's boyfriend --so they could handle the deal. If they failed to respond, he would sell the users the crack cocaine they were seeking.

*Dickerson*, 228 F. App'x at 865-66 (footnotes omitted). The Court of Appeals went on to state in dicta that

> [e]ven if we were to assume that the court should have allowed the records to come before the jury, we would be hard pressed to hold that the court's ruling prejudiced appellant's

substantial rights. As noted above, the evidence of guilt was overwhelming, and the July 8 episode was merely one of many drug transactions that spanned a ten-year period of continuous drug trafficking.

*Dickerson*, 228 F. App'x at 867. Thus, even if Dickerson were able to offer documentary evidence indicating that he was not present for the July 8, 2004 episode, there is no reasonable probability that the outcome of the trial would have been different in the face of such overwhelming evidence of guilt.[5] (*See, e.g.*, cr. doc. 64 at 179-80 (Ray Anthony Usry, an informant, testified that Dickerson was present at the house 50 to 60 percent of the times that he visited to purchase drugs between 1994 and 1997 and that Dickerson actually sold him cocaine on three or four occasions); *id.* at 196-98 (Officer John Miles, Jr., testified that Dickerson was present at his home as transactions occurred outside his residence on December 8, 1996); *id.* at 219 (Dickerson allegedly admitted to Officer Harold Johnson after arrest on forfeiture charges in 1998 that he was aware that drug dealing was occurring in the house but could do nothing about it); *id.* at 315-19

---

[5] The Court also notes that if the records had been admitted, they would have been presented by John Eric Hood, the Pawn City manager who kept the store's payroll records. (Cr. doc. 69 at 70-75.) Hood's testimony was not ideal, as he stated outside of the presence of the jury that he had no independent memory of Dickerson working on July 8, 2004. (*Id.* at 75.)

11

(Steve Ferguson, a drug distributor, testified that Dickerson was present at many of his deliveries to Lamar (Dickerson's son) and that Dickerson may have paid for Lamar's purchase on one occasion); *id.* at 335 (Ferguson stated that he made many deliveries between 2002 and 2003 and that Dickerson was often present).)

Counsel did not perform deficiently by failing to call Lipsey, and there is no likelihood that the outcome of the trial would have been different had Lipsey been called or the payroll records introduced. Consequently, counsel was not ineffective under either ground 2 or 4.

### E.    Ground 3

Dickerson contends that his counsel was rendered ineffective by judicial errors made at trial. (Doc. 1 at 9.) Specifically, he alleges that

> [w]henever the Government gave a date that the drug activity occured [sic] at the Petitioner's home, the Petitioner had evidence from employment logs or documentation that he was not there. No drug dealer or paid informant gave or could give exact dates nor times. The Court repeatedly, restricted cross examination of government witnesses, and openly reprimanded counsel harshly in front of the Jury. At one point, counsel requested to cross-examine a witness and the court instructed the witness to leave the witness stand.

(*Id.*)

Dickerson raised the underlying claim before the Court of Appeals. *Dickerson*, 228 F. App'x at 867. Since counsel only objected to the district judge's limitation of the cross-examination of Gantry Habersham (cr. doc. 64 at 286-298), the Eleventh Circuit only addressed that instance for judicial misconduct. *Dickerson*, 228 F. App'x at 867. That Court found "no abuse of discretion in the court's handling of [Dickerson's] cross-examination of [the] witness." *Id.* Dickerson cannot re-litigate the issue on collateral attack under § 2255, even though it has been repackaged as an ineffective-counsel claim. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("The Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

To the extent Dickerson contends that counsel was ineffective in failing to object to the district judge's limitations in other cross-examinations, his claim must fail, as he does not particularize the claim by listing any of the witnesses' names, citing to the record, or indicating how the judge erred. Such general, conclusory allegations, devoid of any specific factual support, are simply insufficient to obtain § 2255 relief.

*Lynn*, 365 F.3d at 1239 (district court not required to hold § 2255 hearing on mere conclusory allegations); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (§ 2254 petitioner not entitled to an evidentiary hearing when claims are merely conclusory allegations unsupported by specifics); *Saunders v. United States*, 278 F. App'x 976, 978 (11th Cir. 2008) (hearing not required on claims based upon unsupported generalizations).

The Court notes that it is not unusual for a district judge to chastise an attorney for wandering too far afield during his examination of witnesses, nor is it always error for an attorney to "push the line" in an attempt to obtain favorable testimony for his client. Dickerson's generalized allegations simply do not show any judicial or attorney error or prejudice from such an error. Accordingly, this ground is meritless.

### F. Ground 5

In Dickerson's final ground, he contends that the district judge incorrectly calculated his sentence under the United States Sentencing Guidelines. (Doc. 1 at 12.) The guidelines section applicable to Dickerson's conviction provides:

(a) Base Offense Level:

> (1) The offense level from § 2D1.1 applicable to the underlying controlled substance offense, except as provided below.
>
> (2) If the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises, the offense level shall be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance offense, but not greater than level 26.

U.S.S.G. Manual § 2D1.8. Dickerson contends that the district judge applied § 2D1.8(a)(1) but should have applied (a)(2), as the jury did not explicitly find that he actually participated in the underlying offense. (Doc. 1 at 12.)

A jury need not make such findings. The Eleventh Circuit has clearly held that a district judge may "use extra-verdict enhancements [proved by a preponderance of the evidence] . . . to increase a defendant's base offense level" under the Sentencing Guidelines. *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005); *id.* at 1300-1306 (noting that such fact-finding by the district judge at sentencing did not contravene the principles established in *United States v. Booker*, 543 U.S. 220 (2005)). Here, the district judge adopted the factual statements contained in the Presentence Report ("PSI"). (Cr. doc. 66 at 20.) The PSI,

supported by testimony from the trial, showed that Dickerson's home was a "beehive" of drug activity, he was warned by the police to shut the sales down or risk forfeiture of his property, he received a misdemeanor conviction in 1998 for failing control his home to prevent drug activity, his kitchen was used to cook crack cocaine, he was around the house when many of the drug sales took place, and he may have even directly participated in some transactions. (PSI at 7-9, 12.) As noted by the Eleventh Circuit, Dickerson was, on many occasions, "present and tacitly, if not explicitly, approved of what was going on." *Dickerson*, 228 F. App'x 865. Consequently, the district judge was well within his discretion to deduce that Dickerson's continued willful ignorance in the face of police warnings and a conviction, indicated that he had at least some level of participation in the underlying offenses.

Furthermore, § 2D1.8(a)(2) does not apply when the defendant "possessed a dangerous weapon in connection with the instant offense." U.S.S.G. Manual § 2D1.8, Application Note. The PSI shows that three firearms were seized from Dickerson's home during a search in September 1995 (within the time-frame for Dickerson's federal conviction), including

a pistol that was found beneath the cushion of a couch. Since Dickerson was present at his home during the search and was known to reside there full-time, the weapon was attributed to him. (PSI at ¶ 28; *id.* Obj. at 7.)

The application notes also instruct a district judge to apply the harsher standard if the defendant "had previously allowed any premises to be used as a drug establishment without regard to whether such prior misconduct resulted in a conviction." U.S.S.G. Manual § 2D1.8, Application Note. The Court acknowledges that there is no evidence that Dickerson allowed any premises to be so used prior to the period set out in the indictment, but the police interrupted the activities on several occasions and warned Dickerson of the possible consequences of failing to curb his continued use of his home as a drug haven. And he was convicted on related charges in 1998, yet still refused to alter his criminal behavior by 2004. Such continuous disregard of the law justified the district judge's application of the harsher guidelines provision. Since this ground is without merit, counsel had no duty to raise it on appeal.

### III. CONCLUSION

For all of the reasons explained above, Dickerson's § 2255 motion (doc. 1) should be **DENIED**.[6] Additionally, 28 U.S.C. § 2253(c) prohibits an appeal in this matter unless the Court issues a Certificate of Appealability. This certificate may issue only if movant has made a substantial showing of the denial of a constitutional right. If granted, the certificate must indicate which specific issue or issues satisfy this showing. In accordance with the foregoing, a Certificate of Appealability should be **DENIED,** as movant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 17th day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] Dickerson also moved to delay ruling on his § 2255 motion so that his other motions could be resolved and he could supplement his § 2255 motion with any favorable information he gained from them. (Cr. Doc. 90; doc. 2.) The motions were decided adversely to him, and his time for amending his motion has passed. Consequently, his motion is **DENIED**.